WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gary F. Lowry and Marian Carol (husband and wife),<br><br>    Plaintiffs,<br><br>vs.<br><br>EMC Mortgage Corporation; JPMorgan Chase & Company; JPMorgan Chase, N.A.,<br><br>    Defendants. | No. CV 11-8177-PCT-JAT<br><br>**ORDER** |

Pending before the Court are: (1) Defendants' Motion to Strike (Doc. 14); (2) Defendants' Motion to Dismiss (Doc. 6); Plaintiffs' Motion to Remand (Doc. 9); and (4) Plaintiffs' Motion for Status of Case (Doc. 22). The Court now rules on these Motions.

**I.   BACKGROUND**

Plaintiffs Gary F. Lowry and Marian Carol filed a complaint against Defendants EMC Mortgage Corporation ("EMC"), JPMorgan Chase & Company ("JPMC"), and JPMorgan Chase Bank, N.A. ("Chase") alleging fraudulent business practices associated with a failed Home Affordable Modification Program (HAMP) loan modification for Plaintiffs' mortgage. (Doc. 1-1 at 3-6).[1] Plaintiffs allege all of the following facts.

---

[1] Throughout this order, any page numbers that reference Plaintiffs' Complaint (Doc. 1–1) refer to the pagination found on the Court's CM/ECF docketing system and not the internal pagination of the document.

Plaintiffs began living in their home in November 2005. *Id.* at 22. Plaintiffs refinanced their home in April 2006. *Id.* This refinancing agreement secured for Plaintiffs "a 6.3% interest-only loan for two years." *Id.* Plaintiffs were qualified for this loan based on the income produced by their "spiritual ministry, Western Spirit Enrichment Center." *Id.* In December 2006, EMC purchased Plaintiffs' loan. *Id.* at 23. In February 2008, Defendants notified Plaintiffs by letter "that their loan interest rate would be increasing to 7.875% and their monthly payment to $3,150.00." *Id.* Plaintiffs then requested a loan modification and submitted "copies of their Western Spirit bank statements, reflecting its deposits and income." *Id.* As of November, Plaintiffs still had not acquired a loan modification and were informed that "their loan would reset again in December to 8.875%" and their monthly payment would increase 12%. *Id.*

In January 2009, Plaintiffs entered into a loan modification agreement with Defendant EMC. *Id.* at 24. Plaintiffs allege that "EMC obviously granted Plaintiffs this loan modification based on the income from their spiritual ministry, Western Spirit." *Id.* In December 2010, Plaintiffs received notice of their loan terms subsequent to the expiration of their loan modification. *Id.* at 25. This notice informed Plaintiffs that the payments and interest rate on their mortgage loan were again set to increase. *Id.* On December 6, Plaintiffs requested a loan modification pursuant to the Making Home Affordable (MHA) program and were notified that EMC acknowledged their request and wanted Plaintiffs to submit additional information. *Id.* Plaintiffs complied with EMC's requests for information and submitted their application to Mr. Samuel Young, a "Home Lending Executive Office" contact person for EMC. *Id.* at 26.

In January 2010, Mr. Young contacted Plaintiffs by phone and acknowledged receipt of their submission and explained to Plaintiffs that "he 'didn't see a problem with it' as long as Plaintiff Lowry continued to make his new higher monthly payments" *Id.* Throughout the process of considering Plaintiffs requested modification, Mr. Young indicated that the application "should go through easily." *Id.* Later that month, Plaintiffs received a letter from EMC stating, "[EMC] had not received any of the loan modification documents EMC had

requested." *Id.* Plaintiffs subsequently received numerous communications from EMC staff regarding their loan modification documents, wherein EMC represented that they had not received such documents. *Id.* at 27. After explaining the situation to an EMC employee, Ms. Tymika Gaston, via a January 17 phone conversation, Plaintiffs were assured that "[their loan] ***should*** be approved shortly, but be sure to continue making your monthly loan payment on time" *Id.* (emphasis added). Mr. Young then contacted Plaintiffs and requested further documentation and, again, assured Plaintiffs that "[a]s soon as I receive this Dodd-Frank form, the application ***should*** be complete and ***should*** be approved in a couple of weeks." *Id.* (emphasis added). All of these events occurred in January.

On February 24, 2011, Plaintiffs were informed by Mr. Young, via telephone, that their application had been denied because "the modification did not yield the investor the return he wanted." *Id.* Further, Mr. Young represented that someone from EMC called Plaintiffs to notify them of this denial three days earlier. *Id.* Plaintiffs deny receiving such a phone call. *Id.* In late February, Plaintiffs called EMC and were informed that they were denied a loan modification because "their income was too low." *Id.* at 29.

In April, Plaintiffs demanded a written modification denial letter. *Id.* Thereafter, Plaintiffs received letters informing them that foreclosure proceedings had been instituted on their house. *Id.* at 30. Such letters contained the wording "[t]his is an attempt to collect a debt," although Plaintiffs were current on their mortgage payments. *Id.* at 30. Plaintiffs then received a letter requesting documentation for a loan modification, and after discussing this letter with EMC employees, Plaintiffs were informed that they needed to call Mr. Shea, an EMC employee. *Id.* at 31. Plaintiffs were unable to reach Mr. Shea. *Id.* Plaintiffs were unable to reach anyone at EMC who had previously been assigned to their loan modification application. *Id.* Throughout their loan modification application process, Plaintiffs received documentation and phone calls requesting documentation already sent, attempting to collect a debt or debts that did not exist, offering a new loan modification and, denying their previous modification. *Id.* at 30-37.

In April 2011, Plaintiffs appealed the denial of their loan modification when they

- 3 -

discovered that their initial denial was based on their personal income rather than that of their non-profit spiritual ministry. *Id.* at 32. Plaintiffs appealed via letter, explaining that they believed it was inappropriate to use their personal income, as both Plaintiffs are "ordained ministers who operate a [501(c)(3)] non-profit religious organization and spiritual ministry, Western Spirit Spiritual Enrichment Center. [Plaintiffs] are both non-salaried volunteer employees of this ministry. [Their] property is leased to Western Spirit and [it] currently [makes], and always [has] made, the mortgage payment." *Id.* at 31-32.

In June 2011, Plaintiffs were informed via telephone that their appeal was denied because their documentation was "unrelated to the dispute" and that another loan modification application would be sent for Plaintiffs to complete. *Id.* at 30-31. On July 5, 2011, Plaintiffs received a letter from EMC, explaining that their loan modification was denied because the bank felt their income was insufficient to support the loan. *Id.* at 34. Specifically, EMC indicated that "[b]ecause the loan was granted to you individually, we must rely upon your personal income when attempting to qualify your loan for a modification. We're unable to consider income from a third party not affiliated with the loan." *Id.* Thereafter, Plaintiffs continued to receive letters asking for documents already provided, duplicates of previous letters, and offers to enter into a loan modification. *Id.* at 36-37. On October 1, 2011 "Plaintiffs ceased making any further payments to EMC or Chase." *Id.* at 38.[2]

## II.   PLAINTIFFS' MOTION TO REMAND

This case was filed on October 11, 2011, in Yavapai County Superior Court. (Doc. 1). On November 10, 2011, Defendants removed the action to Federal Court. Plaintiffs now seek to remand to Yavapai County Superior Court on the grounds that: "Plaintiffs' Complaint

---

[2] While Plaintiffs include numerous facts regarding Defendant EMC that allegedly give rise to Plaintiffs' claims against Defendant EMC, Plaintiffs have not included any sufficient factual basis for claims against Defendants JPMorgan Chase and JPMorgan Chase Bank, N.A. (the "Chase Defendants"). If Plaintiffs choose to amend their complaint, they must allege a factual basis for any claims against the Chase Defendants and connect such factual basis to their legal theories against those Defendants.

- 4 -

1  does not raise a federal question. It only asserts violations of . . . numerous other Arizona
2  state laws. [Nor] does it raise a state law claim that necessarily turns on the interpretation of
3  federal law." (Doc. 9 at 6). Additionally, Plaintiffs argue that, because "Plaintiffs did not ask
4  for a specific amount of damages in their Complaint[,]" any claim regarding the amount in
5  controversy is too speculative for this Court to assert diversity jurisdiction over their claims.
6  (Doc. 9 at 10). In response, Defendants argue that this Court has jurisdiction pursuant to 28
7  U.S.C. sections 1331 and 1332. (Doc. 1 at 2); (Doc. 13 at 1-2).

8        28 U.S.C. section 1331 provides that "district courts shall have original jurisdiction
9  of all civil actions arising under the Constitution, laws, or treaties of the United States." 28
10 U.S.C. § 1331. It appears that such federal question jurisdiction exists in this case. Several
11 of Plaintiffs' claims appear to arise under federal laws. (Doc. 1-1 at 45-57). For example,
12 Plaintiffs allege that Defendants have violated the Equal Credit Opportunity Act and the Fair
13 Debt Collection Practices Act, both of which are federal laws. *Id.* at 49. The complaint
14 specifically reads: "[t]he Defendants have further violated state ***and federal law*** by violating
15 the Fair Debt Collection Practices Act, the Consumer Legal Remedies Act, the Uniform
16 Deceptive Trade Practices Act, and the Equal Opportunity Credit Act." *Id.* (emphasis added).
17 Accordingly, to the extent that Plaintiffs' alleged claims arise under federal law, this Court
18 has jurisdiction over those claims. Further, the Court can assert supplemental jurisdiction
19 over state law claims pursuant to 28 U.S.C. section 1367(a) as long as those claims arise out
20 of the same case or controversy as the federal claims. 28 U.S.C. § 1367(a).

21       Even if the Court did not have federal question jurisdiction, remand would still be
22 improper as the Court would nonetheless have diversity jurisdiction over this case. Section
23 1332 allows district courts to exercise jurisdiction over cases where the parties are citizens
24 of different states and the amount in controversy is $75,000 or more. 28 U.S.C. § 1332.
25 When a case is removed to Federal Court, the burden of proving the amount in controversy
26 is higher than it would have been had the case been filed directly in federal court. *Cohn v.*
27 *Petsmart, Inc.*, 281 F.3d 837, 839 (9th Cir. 2002). Specifically, "[t]o support removal based
28 on diversity jurisdiction, [a removing defendant] has the burden of proving, by a

1    preponderance of the evidence, that the amount in controversy exceeds $75,000." *Id.* "Under
2    this burden, the defendant must provide evidence establishing that it is more likely than not
3    that the amount in controversy exceeds that amount." *Sanchez v. Monumental Life Ins. Co.*,
4    102 F.3d 398, 404 (9th Cir. 1996) (internal citation omitted). "[R]emoval 'cannot be based
5    simply upon conclusory allegations' where the [complaint] is silent" as to the dollar amount
6    of damages the plaintiff seeks. *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377
7    (9th Cir. 1997) (internal citation omitted). However, the inquiry into the amount in
8    controversy is not confined to the face of the complaint. *Valdez v. Allstate Ins. Co.*, 372 F.3d
9    1115, 1117 (9th Cir. 2004).

10   Here, there is no dispute as to the citizenship of the parties. (Doc. 1-1 at 6-8). The
11   primary issue is whether Defendants have made a proper showing that the amount in
12   controversy exceeds $75,000. Plaintiffs have listed no specific dollar amount in their
13   complaint, but have asked for, among other things, an order requiring Defendants to
14   "disgorge to Plaintiffs all revenue earned as a result of their unlawful acts[;]" "rescission
15   and/or restitution[;]" and/or "injunctive relief, consisting of a temporary restraining order,
16   preliminary injunction, and/or permanent injunction preventing Defendants from pursuing
17   [a] foreclosure action in any manner or form against Plaintiffs' home and property[.]" (Doc.
18   1-1 at 58).

19   In actions seeking injunctive or other equitable relief, the amount in controversy is
20   measured by the value of the object of the litigation. *Cohn*, 281 F.3d at 840 (internal citation
21   omitted). In the instant case, one such object of the litigation is Plaintiffs' home. Here,
22   Plaintiffs ask for injunctive relief preventing Defendants from foreclosing on their home.
23   (Doc. 1-1 at 58). Accordingly, Plaintiffs' home is an object of the litigation in this case.
24   Documents provided by Defendants show that the value of Plaintiffs' home is $420,000.[3]
25   (Doc. 13-1 at 11). While they do not stipulate to the amounts put forth by Defendants,

---

[3] Those same documents value Plaintiffs loan at $483,550. (Doc. 13-1 at 12).

- 6 -

Plaintiffs do not appear to dispute that their home is valued at more than $75,000.[4] (Doc. 15 at 3-4).

Plaintiffs argue that, if the purpose of litigation is not entirely related to the sale or transfer of a property, then said property is not the object of litigation. (Doc. 15 at 3). Plaintiffs state that "[t]he primary and whole purpose of the Plaintiffs' Complaint here is NOT to prevent Defendants from foreclosing on, transferring, or selling Plaintiffs' property." (Doc. 15 at 3).[5] Therefore, Plaintiffs argue, the value of their home is not to be considered in the amount in controversy.

However, Plaintiffs plainly seek, despite their assertions otherwise, (Doc. 15 at 3), injunctive relief barring Defendants from "pursuing foreclosure action in any manner or form against Plaintiffs' home and property." (Doc. 1-1 at 58). Plaintiffs have failed to establish that a property must be the "primary purpose" of litigation in order for that property to be the object of said litigation. If Plaintiffs were solely granted the injunctive relief requested regarding their home, the amount in controversy would far exceed $75,000. Even if Plaintiffs were only granted injunctive relief ordering "the prompt implementation of a permanent loan modification," (Doc. 1-1 at 58), the amount in controversy, the value of Plaintiffs' loan, would exceed $75,000.

Accordingly, because it appears from the allegations in Plaintiffs' Complaint that the Court has both federal question jurisdiction and diversity jurisdiction, the Motion to Remand is denied.

**III. DEFENDANTS' MOTION TO STRIKE**

Defendants request that Plaintiffs' Response to Defendants' Motion to Dismiss (Doc.

---

[4] Plaintiffs merely argue that "[i]t is immaterial that the value of Plaintiffs' property or loan exceeds the $75,000 amount in controversy." (Doc. 15 at 4).

[5] The Court notes that the injunctive relief requested in Plaintiffs' Complaint belies the assertion that Plaintiffs do not seek to prevent Defendants from foreclosing on their property. Plaintiffs cannot now take a litigation position inconsistent with the relief requested in their Complaint merely to dispute the amount in controversy without also withdrawing such requested relief.

10) be stricken pursuant to Local Rule of Civil Procedure 7.2(m)(1). (Doc. 14). Defendants argue that the Response should be stricken because Plaintiffs have exceeded Local Rule 7.2(e)'s page limitation for a response to a motion by two pages. (Doc. 14). Local Rule 7.2(i) allows that when a motion "does not conform in all substantial respects with the requirements of this Local Rule . . . such non-compliance may be deemed a consent to the denial or granting of the motion and the Court may dispose of the motion summarily." LRCiv. 7.2(i).

Motions to strike are generally disfavored. *First Horizon Home Loan Corp. v. Phillips*, 2008 WL 906698, (D. Ariz. Mar. 31, 2008). Further, "[d]istrict courts have broad discretion in interpreting and applying their local rules." *Miranda v. Southern Pacific Transport Co.*, 710 F.2d 516, 521 (9th Cir. 1983). "[T]he language of LRCiv 7.2(i) is permissive in nature. Therefore, the decision as to whether dismissal is appropriate is within the discretion of the trial judge and is properly determined based on the specific record." *Bell v. Moore*, CV 06-1526-PCT-SMM, 2007 WL 865313 (D. Ariz. Mar. 20, 2007).

In this case, justice would not be served by striking Plaintiffs' response. Plaintiffs are proceeding pro se and Defendants have not shown that Plaintiffs' failure to strictly follow the local rules has prejudiced Defendants. (Doc. 14). In essence, Defendants ask this Court to resolve this entire matter based on a two-page technicality. *Id.* It would not promote a just result in this case to construe the rules so strictly. Accordingly, Defendants' motion to strike is denied. (Doc. 14).[6]

## IV.   DEFENDANTS' MOTION TO DISMISS

Defendants' move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

---

[6] The Court also denies Defendants' request "that they be given five (5) days following the Court's ruling on this motion to submit their reply, if the motion to strike is denied." (Doc. 14 at 2). It is procedurally inappropriate for Defendants to refuse to file a reply until the Court rules on another motion without first obtaining permission for such a procedure from the Court. Defense counsel would be well-served in the future to either move for such a procedure or to lodge or file a reply within the time such a reply is due.

### A. LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8. Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id.*

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than blanket assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Id.* Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Because Plaintiffs are proceeding pro se, the Court must construe their complaint liberally, even when evaluating it under the *Iqbal* standard. *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1011 (9th Cir. 2011).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in a complaint in the light most favorable to the drafter of the complaint, and the

Court must accept all well-pleaded factual allegations as true. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation, *Papasan*, 478 U.S. at 286, or an allegation that contradicts facts that may be judicially noticed by the Court, *Shwarz*, 234 F.3d at 435.

### B.  ANALYSIS

Plaintiffs Complaint contains six counts against Defendants. (Doc. 1-1 at 45-57). These counts, however, appear to be categories or, in some cases, groupings of claims. *Id.* Plaintiffs' organization of these claims into these categories does not seem to follow a pattern useful for legal analysis. However, it appears to the Court that the claims fall within five general categories: (1) fraud claims, (2) claims pursuant to violations of state and federal law, (3) breach of contract claims, (4) unjust enrichment claims, and (5) promissory estoppel claims. The Court will discuss each of these categories of claims in turn.

#### 1.  Fraud Claims

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 12(b). To avoid dismissal under the Rule 9(b) requirements, Plaintiffs claim must "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-1066 (9th Cir. 2004) (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1989).

Further, to state a claim for fraud:

> a plaintiff must show that the defendant made a false, material representation that he knew was false or was ignorant of its truth, with the intention that the hearer of the representation act on it in a manner reasonably contemplated, that the hearer was ignorant of the representation's falsity, rightfully relied on the truth of the representation, and sustained consequent and proximate damage.

*Haisch v. Allstate Ins. Co.*, 5 P.3d 940, 944 (Ariz. Ct. App. 2000) (citing *Echols v. Beauty Built Homes, Inc.*, 647 P.2d 629, 631 (Ariz. 1982)).

Here, Plaintiffs allege that:

> Defendants engaged in unlawful and fraudulent practices . . . in that they made false promises and used deception, deceptive practices, and/or misrepresentations in connection with the sale or advertisement of modified mortgage loans when they first informed Plaintiffs that their modification application was denied because 'the modification did not yield the investor the return he wanted', then that the Plaintiffs' [sic] "do not have sufficient income to support the loan', and finally 'because you did not provide us with the documents we requested."

(Doc. 1-1 at 47). Plaintiffs further allege that Defendants committed fraud when "they failed to provide timely notice in response to Plaintiffs' loan modification application; provided several insufficient and fraudulent explanations after denying Plaintiffs' loan modification application; and discriminated against Plaintiffs." *Id.* Plaintiffs allege that EMC committed fraud when one of EMC's employees called Plaintiffs and indicated that "someone at EMC had called to inform them [that their modification was denied] on February 21." (Doc. 1-1 at 28). Plaintiffs assert that this statement "is totally and completely false." *Id.* Plaintiffs also allege fraud in reference to a June 24 letter from EMC which stated:

> Chase is unable to offer you a loan modification if you do not have income sufficient to support the loan. Because the loan was granted to you individually, we must rely upon your personal income when attempting to qualify your loan for a modification. We're unable to consider income from a third party not affiliated with the loan.

*Id.* at 34. Plaintiffs assert that "[t]his lie constitutes fraud" and EMC's claim is "totally and completely false and EMC knows this." *Id.* Plaintiffs support this inference based on a February 4, 2009 letter (which was not provided to the Court) that shows a "Bank Statement Analysis" which uses income from Plaintiffs religious ministry as opposed to their personal income. *Id.* These allegations are too conclusory to meet the high standard for pleading fraud as required by Federal Rule of Civil Procedure 9(b).

At no point do Plaintiffs allege any facts to support the inference that the statements were actually false, or that at the time the allegedly false comments were made, anyone knew them to be false. *See generally id.* Accordingly, Plaintiffs have failed to state a claim upon which relief can be granted for fraud.

- 11 -

### 2. State and Federal Law Claims

Plaintiffs allege that Defendants have violated a number of state and federal laws. First, Plaintiffs claim that Defendants discriminated against Plaintiffs on the basis of religion pursuant to the Equal Credit Opportunity Act (ECOA). (Doc. 1-1 at 48). The ECOA makes it unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction, "on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract)." 15 U.S.C. § 1691(a)(1).

Assuming without deciding that the ECOA applies to a loan modification, Plaintiffs fail to plead any facts supporting an inference that they were denied a loan modification based on their religion. Plaintiffs merely allege that Defendants "discriminated against Plaintiffs, with respect to their credit transaction (loan modification application), on the basis of their religious beliefs - specifically by ignoring the income of their spiritual ministry." (Doc. 1-1 at 48). While Plaintiffs do assert that they are ordained ministers, (Doc. 1-1 at 32), they do not allege sufficient facts to show that their religion is a protected class. Assuming Plaintiffs are a protected class, Plaintiffs do not assert facts sufficient to show that they were qualified for the loan modification. Plaintiffs argue that EMC used an improper metric for determining eligibility, (Doc. 1-1 at 34), but they do not allege facts consistent with the claim that this metric was chosen for a discriminatory purpose, or even that it was chosen improperly. Accordingly, the Court will dismiss the ECOA claim.

Plaintiffs next allege that Defendants violated Arizona Revised Statutes section 32-1001 and the Fair Debt Collection Practices Act. (Doc. 1-1 at 49, 53). As Arizona Revised Statutes section 32-1001 solely contains definitions, it is unclear what part of that statute Defendants have violated. Accordingly, this claim will be dismissed.

Under the FDCPA, a debt collector is defined as one who:

> uses any instrumentality of interstate commerce or the mails in any business ***the principal purpose of which is the collection of any debts***, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be ***owed or due another***. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own

> debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6) (emphasis added). Further, that section expressly excludes from the definition of debt collector the following:

> any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; *or* (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

.

15 U.S.C. § 1692a(6)(F) (emphasis added). These sections generally exclude mortgage servicers, banks, and lenders from the FDCPA definition of "debt collector." *See De Dios v. International Realty & Investments*, 641 F.3d 1071, 1075 n.3 (9th Cir. 2011). Because the complaint fails to allege facts that would support the inference that EMC, JPMC, or Chase are "debt collectors" under the FDCPA, this claim is dismissed.

Plaintiffs also allege violations of the Consumers Legal Remedies Act, the Dodd-Frank Wall Street Reform and Consumer Protection Act, and the Uniform Deceptive Trade Practices Act. (Doc. 1-1 at 50). Plaintiffs fail to allege any facts to put Defendants on notice of the factual basis of these claims. In fact, Plaintiffs have done little more than assert violations, for example "Defendants have violated [the Dodd-Frank Act] by not acting in a fair or transparent manner, and have engaged in unfair, deceptive and abusive practices." (Doc. 1-1 at 49). Plaintiffs do not assert what would constitute a violation of these acts, and what, if anything, Defendants did to breach these acts. Accordingly, the Court will dismiss these claims for failure to allege facts sufficient to make such claims plausible.

### 3. **Breach of Contract Claims**

Plaintiffs next allege that Defendants have violated a number of contracts, some between Plaintiffs and Defendants and some between Defendants and others. In order to present a claim for breach of contract, a plaintiff must allege the formation of a contract, its breach, and damages. *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. App. 2004).

Plaintiffs appear to allege that Defendants breached the promissory note or Deed of Trust. However, Plaintiffs have failed to plead facts showing whether, under their loan contract, Plaintiffs were entitled to apply for and obtain a loan modification.

Plaintiffs argue that the Court can infer a contract from "sufficient material terms . . . the formation of legally binding contracts between the Plaintiffs and Defendants for the modification of their loan." (Doc. 1-1 at 52). Modifications to the material terms of a mortgage must be in writing; modifications that are not reduced to writing and executed by both parties are barred by the Statute of Frauds. *Schrock v. Fed. Nat'l Mortg. Ass'n*, CV 11-0567-PCT-JAT, 2011 WL 3348227 at *4 (D. Ariz. Aug. 3, 2011) (citing *e.g. Best v. Edwards*, 176 P.3d 695, 698–99 (Ariz. Ct. App. 2008); *Executive Towers v. Leonard*, 439 P.2d 303, 305 (Ariz. Ct. App. 1968)). Therefore, the Court cannot infer the existence of a loan modification contract. In the absence of more factual allegations ( in the form of specific contractual provisions that were breached or otherwise), Plaintiffs fail to sufficiently allege a breach of contract based on their failure to qualify for a loan modification.

Plaintiffs also allege a violation of the covenant of good faith and fair dealing. (Doc. 1-1 at 53). Arizona law dictates:

> A covenant of good faith and fair dealing is implicit in every contract. This covenant requires that neither party act to impair the right of the other to receive the benefits that flow from their agreement or contractual relationship. As a general rule, an implied covenant of good faith and fair dealing cannot directly contradict an express contract term. Accordingly, the relevant inquiry always will focus on the contract itself, to determine what the parties did agree to.

*Kuehn v. Stanley*, 91 P.3d 346, 354 (Ariz. Ct. App. 2004) (internal citations and quotations omitted).

Plaintiffs do not allege that they ever entered into a binding loan modification agreement. In order to state a claim upon which relief can be granted for violation of the covenant of good faith and fair dealing, Plaintiffs must allege that Defendants acted to impair the right of Plaintiffs to receive the benefits that flow from their contractual relationship in such a way that does not contradict an express contract term. *Kuehn*, 91 P.3d at 354.

Plaintiffs allege the covenant of good faith and fair dealing was breached "with respect to its promise to provide a permanent mortgage modification in good faith (and using the original loan income qualifier) and in such a manner as to avoid frustrating Plaintiffs' reasonable expectations." (Doc 10. at 15-16). However, Plaintiffs have not alleged the existence of an enforceable promise that secured them any right to a loan modification. Accordingly, Plaintiffs have not alleged sufficient information to make this claim plausible and, therefore, this claim is dismissed.

Plaintiffs further argue that the Court should recognize a private right of action to pursue breach of contract claims in regards to HAMP and other contracts. *Id.* at 10. Plaintiffs further assert that "Plaintiffs do not seek to enforce HAMP directly, but rather they seek to enforce the contractual obligations that required Defendants to implement a HAMP modification in the circumstances presented in the Plaintiffs' Complaint." *Id.* This Court has refused to recognize a private right of action for a HAMP breach of contract claim. *See, e.g.*, *Marks v. Bank of America, N.A.*, CV 10-8039-PCT-JAT, 2010 WL 2572988 at *4, 7 (D. Ariz. June 22, 2010). Accordingly, this claim will be dismissed.

### 4. **Unjust Enrichment**

In order to state a claim for unjust enrichment under Arizona law, a plaintiff must show "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011) (citing *Sierra Vista v. Cochise Enters.*, 697 P.2d 1125, 1131-1132 (Ariz. Ct. App. 1984). Additionally, Arizona law holds that "if there is 'a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application.'" *Trustmark Ins. Co. v. Bank One, Arizona, NA*, 48 P.3d 485, 492 (Ariz Ct. App. 2002) (quoting *Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (Ariz. 1976)).

Here, specific contracts–the promissory note and Deed of Trust–govern the relationship between Plaintiffs and Defendants. Plaintiffs allege they were impoverished and that Defendants were enriched in regards to payment of their mortgage and corresponding

fees coupled with "the quality of or fairness in mortgage servicing that had been represented by Defendants." (Doc. 1-1 at 55). Because the relationship between these parties is contractually defined by the Deed of Trust and Promissory Note, the doctrine of unjust enrichment does not apply. Accordingly, the unjust enrichment claim is dismissed.

### 5.  **Promissory Estoppel**

In order to state a claim for promissory estoppel, plaintiff must establish "a promise, which the promissor should reasonably foresee would cause the promisee to rely, upon which the promisee actually relies to his detriment." *Contempo Constr. Co. v. Mountain States Tel. & Tel. Co.*, 736 P.2d 13, 16 (Ariz. Ct. App. 1987) (citing *Tiffany Inc. v. W.M.K. Transit Mix, Inc.*, 493 P.2d 1220 (Ariz. Ct. App. 1972).

Here, Plaintiffs allege that Defendants promised to provide a loan modification. (Doc. 1-1 at 56); (Doc. 10 at 17). These promises were allegedly made during phone conversations with EMC representatives between December 2010 and October 2011. (Doc. 1-1 at 24-37). However, Plaintiffs' own complaint clearly indicates that EMC representatives never promised a loan modification to Plaintiffs. Plaintiffs have alleged that they were harmed by their reliance on Defendants' promises and that they were reasonable in relying on said promises, but they have not done so with any factual specificity. Accordingly, the Court will dismiss Plaintiffs' promissory estoppel claim.

## V.  LEAVE TO AMEND

There is a "longstanding rule that '[l]eave to amend should be granted if it appears at all possible that the plaintiff can correct the defect.'" *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (internal quotation omitted).

Here, it is possible that Plaintiffs' complaint could be cured by allegations of other facts. Accordingly, the Court grants Plaintiffs leave to amend their complaint pursuant to the Federal Rules of Civil Procedure.

## VI.  CONCLUSION

Based on the foregoing

**IT IS ORDERED** denying Plaintiffs' Motion to Remand (Doc. 9).

1 **IT IS FURTHER ORDERED** denying Defendants' Motion to Strike (Doc. 14).

2 **IT IS FURTHER ORDERED** granting Defendants' Motion to Dismiss (Doc. 6). Plaintiffs shall file an amended complaint within 20 days of the date of this Order. If Plaintiffs do not file an amended complaint within 20 days of the date of this Order, the Clerk of Court shall dismiss this case with prejudice without further notice and enter judgment for Defendants.

**IT IS FINALLY ORDERED** denying Plaintiffs' Motion for Status of Case (Doc. 22) as moot.

DATED this 8th day of August, 2012.

_____
James A. Teilborg
United States District Judge