1   WO

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9   Gary F. Lowry and Marian Carol (husband        No. CV-11-08177-PCT-JAT
    and wife),
10                                                  **ORDER**
                        Plaintiffs,
11
    v.
12
13  EMC Mortgage Corporation; JPMorgan
    Chase & Company; JPMorgan Chase, N.A.,
14
15                      Defendants.
16

17         Pending before the Court are: (1) Defendants' Motion to Dismiss Amended

18  Complaint (Doc. 25); and (2) Plaintiffs' Motion to Stay (Doc. 31).  The Court now rules

19  on the Motions.

20         **I.      Plaintiffs' Motion to Stay (Doc. 31)**

21         On October 28 2012, Plaintiffs requested that this case be stayed pending a

22  decision by the U.S. Judicial Panel on Multidistrict Litigation (the "Panel") on Plaintiffs'

23  Motion to Transfer.  On February 8, 2013, the Panel issued an Order denying Plaintiffs'

24  request to transfer their case.  (Doc. 36).  Accordingly, Plaintiffs' Motion to Stay is

25  denied as moot.

26         **II.     Defendants' Motion to Dismiss (Doc. 25)**

27              **A.      Procedural Background**

28  Plaintiffs filed a Complaint in Maricopa County Superior Court alleging claims of

(1) unlawful, unfair, and deceptive business practices; (2) breach of contract and breach of the duty of good faith and fair dealing; (3) unjust enrichment; (4) unfair debt collection practices; (5) promissory estoppel; (6) violations of consent judgments; (7) violations of the Equal Opportunity Credit Act; and (8) fraud through securitization.  (Doc. 1-1). Defendants then removed the case to this Court.  Thereafter, Defendants filed a Motion to Dismiss the Complaint.  (Doc. 6).  After the Motion to Dismiss was fully briefed, the Court granted the Motion to Dismiss, but allowed Plaintiffs leave to amend finding that certain deficiencies in the Complaint could possibly be cured by allegations of other facts.  (Doc. 23).

Plaintiffs then filed an eighty-eight page Amended Complaint.  (Doc. 24). Defendants now move to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6).

### B.    Legal Standard

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8.  Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id.* (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986)).  The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level.  *Id.*

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 555).  A complaint that offers nothing more than blanket assertions will not suffice.  To survive a motion to dismiss, a complaint must contain sufficient

factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Id.* Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly,* 550 U.S. at 557). Because Plaintiffs are proceeding *pro se,* the Court must construe their Complaint liberally, even when evaluating it under the *Iqbal* standard. *Johnson v. Lucent Technologies Inc.,* 653 F.3d 1000, 1011 (9th Cir. 2011). However, "[s]omething labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry v. Renne,* 84 F.3d 1172, 1180 (9th Cir. 1996). "Prolix, confusing complaints ... impose unfair burdens on litigants and judges." *Id.* at 1179.

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in a complaint in the light most favorable to the drafter of the complaint, and the Court must accept all well-pleaded factual allegations as true. *Shwarz v. United States,* 234 F.3d 428, 435 (9th Cir.2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation, *Papasan,* 478 U.S. at 286, or an allegation that contradicts facts that may be judicially noticed by the Court, *Shwarz,* 234 F.3d at 435.

### C.    Analysis

In 2006, Plaintiffs Gary Lowry and Marian Carol obtained a loan from lender, EMC Credit Corporation in the amount of $480,000. The loan was secured by a Deed of Trust in favor of Encore Credit Corporation encumbering real property located at 2900 S. Blue Ranch Road Cottonwood, Arizona 86326 (the "Property"). In 2009, Plaintiffs and EMC Mortgage Corporation entered into a two-year loan modification agreement.

1    Plaintiffs are ordained ministers operating a non-profit spiritual retreat center
2    called Western Spirit Enrichment Center ("Western Spirit").  Plaintiffs allege that they
3    leased the Property to Western Spirit in 2005 and Western Spirit has always made loan
4    payments on the Property.  Plaintiffs allege that they used the income of Western Sprit to
5    qualify for their original loan in April 2006 as well as for the short-term modification in
6    January 2009.

7    Plaintiffs allege that, since December 2010, they have tried to apply and qualify
8    for a loan modification through the Making Home Affordable Program ("MHA") and the
9    Home Affordable Modification Program ("HAMP"), but have been denied any such
10   modification.  Plaintiffs' claims in this case relate to the failed home loan modification.

11   In their Amended Complaint, Plaintiffs have chosen to reassert many of the failed
12   claims identified in the Court's previous Order granting Defendants' Motion to Dismiss.
13   Further, less than half of the eighty-eight pages in the Complaint actually concern any
14   factual allegations relating to Plaintiffs or their claims in this matter.  Rather, Plaintiffs
15   appear to assert various theories of liability against Defendants based on generalized
16   grievances against the mortgage industry and Defendants' practices generally.  This type
17   of press-release-pleading makes it difficult for Defendants and the Court to ascertain the
18   basis of Plaintiffs' claims and does not meet Rule 8's short, concise pleading standard.
19   The Court will nonetheless attempt to ascertain the claims alleged in the Amended
20   Complaint and will address whether Plaintiffs have stated a claim upon which relief can
21   be granted in their numerous allegations.

22   In the caption of their Amended Complaint, Plaintiffs have listed their claims as
23   (1) unlawful, unfair and deceptive business practices; (2) breach of contract and breach of
24   the duty of good faith and fair dealing; (3) fraud; (4) unfair debt collection practices; (5)
25   promissory estoppel; (6) violations of consent judgments; (7) violations of the Equal
26   Opportunity Credit Act; and (8) fraud through securitization.  Despite this seeming
27   identification of their causes of action, Plaintiffs have only included five counts in the
28   Amended Complaint: (1) violations of the Arizona Consumer Fraud Act/fraudulent

business practices; (2) unlawful business practices and unfair competition law; (3) breach of contract, breach of the duty of good faith and fair dealing; (4) unfair debt collection practices; and (5) promissory estoppel.  The Court will discuss each category of claims herein.

### (1)  Breach of Contract and Breach of the Duty of Good Faith and Fair Dealing (Count Three)

Plaintiffs allege that Defendants breached a contract when they denied Plaintiffs' loan modification for the reason that Plaintiffs' personal income did not qualify Plaintiffs for a permanent loan modification.  Plaintiffs allege that they qualified for their original loan using bank account information of Western Spirit and that it was illegal and fraudulent for Defendants to refuse to use the income of Western Spirit as a qualifier for the loan modification.  Plaintiffs fail to point any provision of any contract requiring Defendants to use the income of Western Spirit, rather than the income of Plaintiffs themselves when considering Plaintiffs for a loan modification.  Although Plaintiffs repeatedly allege that the failure to use the income of Western Spirit in determining Plaintiffs' qualification for a loan modification was illegal and fraudulent, they fail to cite to any provision of a contract or any other law that would place such a requirement on Defendants.  Accordingly, Plaintiffs have failed to state a claim upon which relief can be granted for breach of contract based on Defendants' refusal to qualify Plaintiffs for a loan based on the income of a separate entity, Western Spirit.

Plaintiffs also allege that Plaintiffs' interest rate is adjustable according to the LIBOR Index rate and "since Defendant JPMC has admitted involvement in the criminally artificial manipulation and rate-rigging scheme involving the Libor, according to the governmental authorities, this fraudulent act constitutes a breach of Plaintiffs' loan contract and agreement."  (Doc. 23-24 at ¶ 120).  Plaintiffs' allegations regarding the LIBOR Index rate are conclusory and speculative and Plaintiffs fail to identify how the use of such index rate constitutes a breach of contract claim in this case.

**(2) Allegations Regarding Unlawful, Unfair and Deceptive Business Practices and Unlawful Business Practices and Unfair Competition Law (Count Two) and Violations of Consent Judgments**

In the section of their Complaint entitled "Unlawful Business Practices and Unfair Competition Law," Plaintiffs allege that Defendants violated federal law by breaching Chase's agreement with Fannie Mae of which plaintiffs are intended third-party beneficiaries and breaching the servicer participation agreements between Defendants and HAMP for all mortgage loans they service.  Plaintiffs allege that, by participating in the loan modification process and submitting all of the documentation requested by Defendants for a loan modification, they were entitled to a loan modification.  Plaintiffs allege that, by following all of the requirements in applying for a loan modification, a binding contract was created between Plaintiffs and Defendants for a loan modification.

In its prior Order granting Defendants' Motion to Dismiss the original complaint, the Court rejected these claims.  The Court noted that simply applying for a loan modification did not evidence the existence of a contract between the parties.  (Doc. 23 at 13-14).  The Court further held that Plaintiffs failed to state a claim for breach of contract under HAMP on a third-party beneficiary theory.  (*Id.* at 14).  Indeed, this Court has previously analyzed whether Plaintiffs could be third-party beneficiaries under HAMP in circumstances such as those alleged by Plaintiffs and has rejected such a claim.  *See Marks v. Bank of America, N.A.*, No. 3:10-cv-08039-PHX-JAT, 2010 WL 2572988, at *2-7 (D. Ariz. June 22, 2010) (holding that Plaintiff did not have standing to bring a breach of contract claim under HAMP on a third-party beneficiary theory because (1) it would not be reasonable for a borrower to rely on an agreement between a participating servicer and the Department of Treasury as manifesting an intention to confer a right on the borrower because the agreement does not *require* that the participating servicer modify eligible loans, (2) parties who benefit from government contracts are generally assumed to be incidental beneficiaries and may not enforce the contract absent clear intent to the contrary; (3) granting Plaintiff third-party beneficiary status would open the

door to three to four million individual claims, which would contravene the purpose of HAMP as an administrative tool to effectuate the goals of EESA, and (4) permitting individual claims would undermine Freddie Mac's role as compliance officer for HAMP).  Plaintiffs allege that Defendants considered their loan modification application and denied it for various stated reasons.  Plaintiffs do not allege that Defendants refused to consider them for a loan modification.  Plaintiffs fail to point to any provision of any contract between Defendants and any non-party to this suit to which they would be considered third-party beneficiaries.

Accordingly, Plaintiffs have failed to allege facts that would give them standing to sue Defendants for breaches of contract based on contracts between Defendants and third parties and any claims based on such allegations are dismissed.

### (3)  Fraud and Violations of the Arizona Consumer Fraud Act/Fraudulent Business Practices (Count One) and Violations of Equal Opportunity Credit Act and Fraud Through Securitization

In the section of their Complaint entitled "Violations of the Arizona Consumer Fraud Act/Fraudulent Business Practices," Plaintiffs allege that the following instances show that Defendants committed consumer fraud:

First, Plaintiffs allege that, on October 31, 2008, Defendant JP Morgan Chase publicly announced that they were offering a loan modification program to borrowers who were not currently delinquent, but who could be at risk for defaulting.  Plaintiffs allege that Chase stated in that announcement that they would work with homeowners in various ways to obtain a loan modification.  Plaintiffs allege that Chase did not work with them in the ways described in the public announcement, so that such public announcement was fraudulent.

Plaintiffs' allegations that these advertising promises were "knowingly false, deceitful, misleading and damaging to Plaintiffs" are conclusory and are not pled with sufficient facts.  Further, Plaintiffs allegations that they were considered for a loan modification contradict these facts.  Plaintiffs' dissatisfaction with the denial of their loan

1    modification application does not render Chase's statements made in the public
2    announcement knowingly false, deceitful, or misleading.

3         Plaintiffs also claim that various representations made in letters that they received
4    from Chase were knowingly false, deceitful and misleading, but Plaintiffs do not plead
5    facts, that, if true, would lead to the conclusion that such representations were knowingly
6    false, deceitful, or misleading.

7         Further, as in their original complaint, Plaintiffs again claim that statements by
8    Defendants' representatives that they should "hear something positive soon" and that
9    they should continue making payments on their loan in the meantime were fraudulent
10   because they were promises that the loan modification would be approved.   Again,
11   Plaintiffs do not plead facts, which, if true, would lead to the conclusion that such
12   representations were knowingly false, deceitful, or misleading.

13        Plaintiffs also claim that they received three different reasons for the denial of
14   their loan modification.   Plaintiffs claim that, because they received three different
15   reasons, all three reasons were false and fraudulent.   Again, Plaintiffs do not plead facts
16   supporting this conclusion.

17        None of these allegations support Plaintiffs' conclusion that "Defendants engaged
18   in unlawful and fraudulent practices in violation of the Consumer Fraud Act, the Equal
19   Opportunity Credit Act, and other federal laws."   (Doc. 65 at ¶ 94).   Accordingly, these
20   claims will be dismissed.

21        Plaintiffs further argue that they were defrauded because their loan was sold into
22   mortgage-backed securities.   Plaintiffs agreed that their note could be sold one or more
23   times without notice to Plaintiffs in the Deed of Trust and that this could result in a
24   change to their Loan Servicer.   Accordingly, Plaintiffs agreed to and were on notice that
25   their note could be sold.   *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d
26   1034, 1042 (9th Cir. 2011).   Moreover, Plaintiffs' contention that the MERS system of
27   securitization is so inherently defective that it renders their deed of trust completely
28   unenforceable has been repeatedly rejected by this Court.   *In re Mortgage Elec.*

*Registration Sys. (MERS) Litig.,* MDL 09–2119–JAT, 2011 WL 4550189 at *4 (D. Ariz. Oct. 3, 2011).  Accordingly, Plaintiffs' allegations regarding the securitization of their loan fail to state a claim upon which relief can be granted and will be dismissed.

### (4) Unfair Debt Collection Practices (Count Four)

With regard to Plaintiffs' allegations that Defendants violated the Fair Debt Collection Practices Act, Plaintiffs have failed to cure the deficiencies in these claims identified by the Court in its Order granting Defendants' Motion to Dismiss the original complaint.  Accordingly, these claims will be dismissed.

### (5) Promissory Estoppel (Count Six)

With regard to Plaintiffs' allegations that promissory estoppel applies in this case, Plaintiffs have failed to cure the deficiencies in these claims identified by the Court in its Order granting Defendants' Motion to Dismiss the original complaint.  Accordingly, these claims will be dismissed.

### III.    Leave to Amend

Under previous Ninth Circuit Court of Appeals precedent, the court would *sua sponte* grant leave to amend when granting a motion to dismiss, unless a pleading could not be cured by the allegation of other facts.  *See Lacey v. Maricopa County,* 693 F.3d 896, 927 (9th Cir.2012) (citing *Doe v. United States,* 58 F.3d 494, 497 (9th Cir.1995). However, this precedent has been called into question by the Court of Appeals, in light of the recent changes to the Federal Rule of Civil Procedure 15, which now allows parties twenty-one days from responsive pleadings and motions to dismiss to amend as of right. *See id.*  Further, when a plaintiff requests leave to amend, the Court must consider the following factors: (1) undue delay, (2) bad faith, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint. *Western Shoshone Nat. Council v. Molini,* 951 F.2d 200, 204 (9th Cir.1991).  In this case, granting leave to amend the complaint would be futile.  Plaintiffs have previously been given an opportunity to amend their Complaint and have reasserted arguments already rejected by the Court in this case.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IV.      Conclusion**

**Based on the foregoing,**

IT IS ORDERED that Plaintiffs' Motion to Stay (Doc. 31) is denied as moot.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss Amended Complaint (Doc. 25) is granted.  The Clerk of the Court shall enter judgment accordingly.

Dated this 5th day of March, 2013.

James A. Teilborg
Senior United States District Judge